410 F.Supp. 348 (1976)
Joan Evans WILBURN, Plaintiff,
v.
PEPSI-COLA BOTTLING COMPANY OF ST. LOUIS and Crawford and Company, Defendants.
No. 75-533C(4).
United States District Court, E. D. Missouri, E. D.
March 22, 1976.
*349 Roger L. Scherck, Belleville, Ill., for plaintiff.
Fred B. Whalen, Donald L. James, St. Louis, Mo., for defendants.

OPINION
NANGLE, District Judge.
Plaintiff Joan Evans Wilburn brought suit herein pursuant to 28 U.S.C. § 1332 to recover damages, both actual and punitive, allegedly sustained as a result of the fraud of defendants, Pepsi-Cola Bottling Company of St. Louis and Crawford and Company.
The case was tried before the Court without a jury. The Court having considered the pleadings, the documents in evidence, the stipulations of the parties, the testimony adduced, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1. Plaintiff Joan Evans Wilburn is a citizen and resident of the state of Illinois. Defendant Pepsi-Cola Bottling Company of St. Louis is a corporation organized and existing under the laws of the state of Missouri. Defendant Crawford and Company is a corporation organized and existing under the laws of the state of Missouri. Neither Pepsi-Cola Bottling Company nor Crawford and Company have their principal place of business in the state of Illinois.
2. On May 18, 1971, plaintiff was shopping in Reeb's Quality Dairy Center in Belleville, Illinois. As she reached with her right hand to take a carton of Pepsi-Cola off the shelf, the carton behind fell, hitting plaintiff's foot. One bottle in the carton broke and cut into her foot. Plaintiff was taken to the hospital *350 and attended to. She was released after about one hour. Plaintiff currently complains of swelling and pain in her ankle. She is unable to stand for long periods of time and her activities have been restricted. Because of her inability to stand for long periods of time, her income as a beautician has been reduced.
3. The day after the accident, plaintiff received a call from an insurance investigator who wanted a statement. Plaintiff does not know who the man was. She gave a statement.
4. When plaintiff was subsequently able to return to work, a man entered into the Beauty Shop and wanted to ask her questions. Instead, plaintiff directed the man, whose identity is unknown to plaintiff, to her attorney.
5. On or about June 24, 1971, Robert L. Scherck, as attorney for plaintiff, sent a letter to Pepsi-Cola Bottling Company, 2628 West Main, Belleville, Illinois. The letter stated that Mr. Scherck represented Mrs. Wilburn "in an action for damages resulting from an accident which occurred at Reeb's Quality Dairy Center on May 18, 1971." Mr. Scherck also requested that the letter be referred to their insurance company, if they were so protected. The address to which this letter was sent is the address of Clairmon Pepsi-Cola Distributing Company.
6. Clairmon Pepsi-Cola Distributing Company sent the letter to the Pepsi-Cola Bottling Company of St. Louis. On June 30, 1971, Carl Rossiger, an employee of Pepsi-Cola Bottling Company of St. Louis, sent a letter to Mr. Scherck, acknowledging receipt of his letter and advising him that the letter was being forwarded to the insurance counselor in New York.
7. On July 13, 1971, Mr. Scherck sent a letter to Mr. Rossiger enclosing a copy of plaintiff's doctor's medical report.
8. On July 15, 1971, Mr. George G. Tooker of Appalachian Insurance Company sent a letter to Mr. Scherck requesting copies of medical bills, a copy of the attending physician's report, a breakdown of any special damages claimed and a settlement demand. On July 19, 1971, in response to Mr. Tooker's letter, Mr. Scherck forwarded a copy of the medical report but stated that there was insufficient information at that time to evaluate the special damages. On July 28, 1971, Mr. Tooker responded and stated that he had referred the matter to a local representative, Crawford and Company.
9. Mr. Gordon Daniel, an employee of Crawford and Company, was assigned to handle the case. Mr. Daniel, when assigned to the claim, was told that he was working as an independent adjuster for the carrier of Pepsi-Cola Bottling Company of St. Louis. Mr. Daniel had not seen the insurance policy allegedly covering this type of an accident and never represented that there was such coverage. Mr. Daniel is not an attorney. On September 3, 1971, Mr. Daniel met with Mr. Scherck to discuss the case and on September 14, 1971, he took a statement from Mrs. Wilburn. At that time, Mr. Scherck was still in the process of compiling the special expenses.
10. On February 2, 1972, Mr. Daniel contacted Mr. Scherck who still did not have the special damages compiled. On February 14, 1972, Mr. Daniel again talked to Mr. Scherck who said that he expected to have a compilation of the special damages within one week. However, on March 29, 1972, when Mr. Daniel spoke to Mr. Scherck again, this compilation was not ready.
11. On November 29, 1972, Mr. Daniel received a letter which listed the items of special damages. The letter asserted that these damages were the result of negligence on the part of Pepsi-Cola Company and/or Reeb's Dairy.
12. On May 16, 1973, Mr. Scherck called Mr. Daniel and asked for an offer of settlement. Mr. Daniel said that he would call Appalachian Insurance Company immediately. Mr. Daniel did call Appalachian that same day who informed him that they wanted a demand from Mr. Scherck. Mr. Daniel called Mr. Scherck immediately but was unable to reach him. Mr. Scherck returned the *351 call on June 4, 1973 and stated that he was waiting for a new medical report from plaintiff's physician. Mr. Daniel then told Mr. Scherck that the statute of limitations had run.
13. On July 6, 1973, plaintiff brought suit against Pepsi-Cola Bottling Company of St. Louis seeking to recover damages for the injuries sustained, allegedly caused by the negligence of Pepsi-Cola. Wilburn v. Pepsi-Cola Bottling Company of St. Louis, 73 C 455(3). The district court granted defendant's motion to dismiss the complaint as the statute of limitations had run. The United States Court of Appeals for the Eighth Circuit reversed the dismissal, ruling that plaintiff should be allowed to amend the complaint to allege that defendant Pepsi-Cola Bottling Company should be precluded by waiver or estoppel from asserting the statute of limitations as a defense. Wilburn v. Pepsi-Cola Bottling Company of St. Louis, 492 F.2d 1288 (8th Cir. 1974). On remand, following the filing of an amended complaint, the district court again dismissed the complaint holding that the evidence did not establish that any settlement negotiations had been entered into during the two-year period of the statute of limitations. This dismissal was affirmed on appeal in an unpublished opinion. Wilburn v. Pepsi-Cola Bottling Company of St. Louis, 74-1771 (8th Cir. 1975).
14. In fact, Pepsi-Cola Bottling Company of St. Louis did not sell or deliver any Pepsi-Cola products to Reeb's Quality Dairy Center. Pepsi-Cola Bottling Company of St. Louis sold Pepsi-Cola products to Clairmon Pepsi-Cola Distributing Company which is an independently owned and operated business. Pepsi-Cola Bottling Company of St. Louis has no financial interest in Clairmon. As a result, throughout the discussions with the insurance adjuster and the prior court proceedings, plaintiff was proceeding, unknowingly, against the wrong defendant. The record does not disclose when the true facts were discovered.

CONCLUSIONS OF LAW
This Court has jurisdiction over the subject matter and of the parties to this action in accordance with 28 U.S.C. § 1332. The parties have stipulated that Missouri law governs on the issue of fraud.
Plaintiff contends that defendants are liable in fraud for failure to inform plaintiff that Pepsi-Cola Bottling Company of St. Louis was not the proper party defendant. As a result of the failure to speak, plaintiff argues that she is now precluded from pursuing her remedies against the proper defendant as the statute of limitations has run.
The elements of fraud are as follows: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the bearer in a manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the representation; (8) the hearer's right to rely thereon. See Ackmann v. Keeney-Toelle Real Estate Company, 401 S.W.2d 483 (Mo. banc 1966); Wood v. Robertson, 245 S.W.2d 80 (Mo.1952); Salmon v. Brookshire, 301 S.W.2d 48 (Mo.App.1957); Hanson v. Acceptance Finance Co., Inc., 270 S.W.2d 143 (Mo.App.1954).
Plaintiff concedes that no representations were made by either defendant that Pepsi-Cola Bottling Company of St. Louis was in fact the proper defendant. Plaintiff contends, however, that there is liability for the failure to speak. It is well-established that "silence alone will be held to be fraud where the circumstances are such as to impose a duty upon one to speak, and he deliberately remains silent". Schrabauer v. Schnieder Engraving Product, Inc., 224 Mo.App. 304, 25 S.W.2d 529, 533 (1930). The critical question is whether there was a duty upon defendants herein to speak. Such a duty is to be determined from the facts of each case, Jones v. Arnold, 359 Mo. 161, 221 S.W.2d 187 *352 (1949), but generally, the duty to speak is said to arise where there is a relationship of confidence or trust, where there is inequality of condition, and where one party has superior knowledge which is not within the fair and reasonable reach of the other party. See Feeney v. Cook, 242 S.W.2d 524 (Mo.1951); Jones v. Arnold, supra; Hanson v. Acceptance Finance Co., Inc., supra; Parker v. Green, 340 S.W.2d 435 (Mo.App.1960); Thompson v. Kansas City, C.C. & St. J. Ry. Co., 224 Mo.App. 415, 27 S.W.2d 58 (1930). Plaintiff's theory is that defendants had superior knowledge of the facts, not within the fair and reasonable reach of plaintiff, and thus a duty to speak arose. The Court cannot agree. Plaintiff has cited the Court to a number of cases holding that a duty to speak exists. All are distinguishable, however, from the facts established herein.
In Schrabauer v. Schnieder Engraving Product, Inc., supra, the court held that the statute of limitations in a workmen's compensation proceeding was tolled because of the employer's failure to notify the commission of the accident within the required time period. The court, indicating that the employer's silence amounted to fraud, noted that a duty to notify the commission was imposed upon the employer by the act, with a failure to so notify amounting to a misdemeanor. Clearly, the duty to speak existed therein.
In Jones v. Arnold, supra, the court found that there had been fraud in a prior action reforming a deed, the effect of the reformation being to exclude the contingent interests of several minor children in the land. The court found that the parties to the prior suit had intentionally and willfully concealed the proceedings from the children to prevent them from presenting a meritorious defense. Service had been obtained by publication, thus minimizing the possibility that the children would receive actual notice of the proceedings. Although the children were appointed a guardian ad litem at the prior proceeding, after being adjudged in default, the guardian did no more than to file an answer stating that he was unfamiliar with the case and requesting the court to require the strictest proof. The court found that the parties to the prior suit knew of the children's defense and had purposely kept the children from discovering the proceedings. The court concluded by stating that the parties to the prior suit had a duty to disclose the proceedings to the children at the time. It is evident from the facts of the case that these minors were in an unequal position in relation to the other parties and that the other parties clearly had superior knowledge, which was not within the fair and reasonable reach of the children.
In Parker v. Green, supra, the court found that a car salesman had the duty to speak, when another salesman, in his presence, misrepresented the model of the car involved in the sale. The court held that such a duty existed because the facts were not within the fair and reasonable reach of the buyer. It was clear from the facts, however, that the buyer would have been unable to discover the true model of the car without stripping it. Therefore, the facts were not within his fair and reasonable reach.
In Beil v. Gaertner, 355 Mo. 617, 197 S.W.2d 611 (1946), the court found that there had been fraud in the procurement of a judgment of the probate court. The court found that the guardian of a person declared to be of unsound mind had a duty to advise that person of the true nature of the proceedings. This case is clearly not applicable to the facts herein as a guardian owes a fiduciary duty to his ward and the duty to speak thus arises.
In Vendt v. Duenke, 210 S.W.2d 692 (Mo.App.1948), plaintiffs sought to recover damages for fraud in the sale of a house. The court found that the defendant sellers had a duty to speak where the seller, who had constructed the home, obviously knew of the defects therein and where the plaintiffs, because of the nature of the defects and their concealment by the sellers, could not have so known. It must be noted that *353 in the present suit there is no evidence that at the time plaintiff's attorney was discussing the injuries with Mr. Daniel, Mr. Daniel was aware that Pepsi-Cola Bottling Company of St. Louis was an improper defendant. In fact, on the date of trial, Mr. Daniel, who is not an attorney, still did not know whether Pepsi-Cola Bottling Company of St. Louis was the proper defendant. There is no evidence as to when any of the parties herein first discovered that Pepsi-Cola Bottling Company of St. Louis was not a proper defendant. This fact was certainly not the basis on which Pepsi-Cola sought to dismiss the first suit brought by plaintiff.
Moreover, there is no evidence of any concealment of the true facts. Concealment of the facts would affect question of whether the fact misrepresented was within the fair and reasonable reach of plaintiff. Absent concealment, it can not be said that plaintiff herein could not easily obtain knowledge as to the proper defendant. In Vendt, the court stated that there was a difference between active and passive concealment, "the difference consisting in the fact that active concealment implies a purpose or design accomplished by words or acts, while passive concealment consists in mere silence when there is a duty to speak". Id. at 699. There is absolutely no evidence of such a design or purpose herein nor any evidence tending to show the same, as it is not known when Pepsi-Cola Bottling Company first learned that it was not the proper defendant.
In Hanson v. Acceptance Finance Co., Inc., supra, a lender represented to borrowers that the interest on their loan was 8%, the highest lawful rate, and that the interest would amount to $226.80. In fact, that amount exceeded 8% of the loan. The court found that there was no fraud as
plaintiffs had sufficient knowledge of the facts to determine for themselves whether Smith's [the lender's] representation concerning the rate of interest was false. There was no evidence of artifice whereby the plaintiffs were induced to forego an independent investigation of the facts . . . It was the duty of plaintiffs . . . to give reasonable attention to the protection of their own interests. This they neglected to do. Id. at 151.
Here, too, plaintiff had sufficient facts to determine who in fact delivered the soda to Reeb's Quality Dairy. There was no action by defendants which could be said to have induced plaintiff to forego such investigation. As the Court of Appeals found in Wilburn v. Pepsi-Cola Bottling Company of St. Louis, No. 74-1771, the parties had not yet even reached the negotiation stage.
In Thompson v. Kansas City, C.C. & St.J. Ry. Co., supra, where the parties had reached negotiations, there was a misrepresentation to the effect that there was a $900.00 limit on recovery in a suit for wrongful death damages. The court held that
A party to a law suit is not bound to disclose to his adversary facts which tend to defeat or weaken his own right of recovery and he commits no fraud by remaining silent. So, too, one who is trying to settle litigation, has the right to keep his opinion upon the merits to himself, and is not guilty of fraud in so doing, for in such case the parties are dealing with each other at arms length and are adversaries. Id. at 60.
See also Taylor v. Western Casualty & Surety Company, 523 S.W.2d 582 (Mo. App.1975) holding that absent evidence of any concealment of facts which induced a party to act as it did, there was no duty to speak where the parties were engaged in arm's length settlement negotiations.
It can not be said herein that the identity of who delivered the Pepsi-Cola to Reeb's Quality Dairy was not within the fair and reasonable reach of plaintiff. Such fact was equally ascertainable to both Pepsi-Cola Bottling Company of St. Louis and to plaintiff. There is absolutely no indication that the true facts were known to defendants and concealed *354 from plaintiff. Under these circumstances, the Court is unable to find that defendants had a duty to speak. Accordingly, there can be no finding of fraud.

ORDER
Pursuant to the opinion filed this date,
IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants shall have judgment against plaintiff at plaintiff's costs.